No. 13107

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

THE STATE OF MONTANA,

                  Plaintiff and Respondent,

    -vs-

EVELYN FARNES,

                  Defendant and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial District,
              Honorable C. B. Sande, Judge presiding.

Counsel of Record:

    For Appellant:

        John L. Adams, Billings, Montana

    For Respondent:

        Hon. Robert L. Woodahl, Attorney General, Helena,
         Montana
        Harold F. Hanser, Billings, Montana

Submitted without oral argument

---

                Submitted:  October 22, 1976

                Decided: DEC 29 1976

Filed: DEC 29 1976

*Thomas Je. Kearney*
                            Clerk

Hon. L.C. Gulbrandson, District Judge, sitting in place of Mr. Chief Justice James T. Harrison, delivered the Opinion of the Court.

Defendant Evelyn Farnes appeals from a judgment of conviction for the crime of theft, tried in the District Court of the Thirteenth Judicial District, in and for the County of Yellowstone.

On February 8, 1975, one Bill Stumpf arrived at the Public Auction Market in Billings, Montana, with a number of other people, in a cream-colored Oldsmobile, towing a horse trailer. An unbranded sorrel mare was unloaded from the trailer, and was delivered by Stumpf to an employee of the Market at approximately 12:30 a.m., telling the employee to run the horse through "loose" at the sale that day. Horses which are run through "loose" are normally sold as canning horses, whereas horses which are ridden through the sales ring are normally sold as pleasure or working horses. Stumpf did not claim any ownership of the animal, but consigned the mare in the name of one Ray Tanner.

After the sale, at about 5:15 p.m., February 8, 1975, a purported bill of sale to the animal signed by one Earl West to Ray Tanner was delivered to the Auction Market by the defendant Evelyn Farnes. The employee receiving the bill of sale testified that the defendant introduced herself as Ray Tanner's wife, and when told that payment would be delayed until the following Monday wrote the name of Karla Reichert on the back of the bill of sale and told the employee to make payment to her friend Reichert. The employee receiving the bill of sale from the defendant testified over objection that approximately 30 minutes earlier he had received a phone call from a person inquiring what he needed for the

horse, and the employee answered that a bill of sale would be required, and the caller responded that a bill of sale would be delivered for the horse.

The local brand inspector testified that he photographed the mare on February 8, 1975, because he knew the mare was on her way to a dog food factory in South Dakota and that prior to the sale he put a stop on the check for the sale of the horse, and that at the sale he saw the defendant, in the company of Bill Stumpf, Buzz Feeley, and Karla Reichert.

The local inspector/detective testified that on February 10, 1975, he commenced an investigation regarding the sale of the horse, learning that Karla Reichert was the daughter of the defendant and the girl friend of Bill Stumpf. He further testified that he was unable to locate anyone by the name of Ray Tanner or Earl West, the persons named on the bill of sale delivered by the defendant.

On approximately February 25, 1975, Dr. Thomas Morledge reported a sorrel mare as missing from his winter pasture, and from photographs he had taken and the photograph taken on February 8 at the Auction Market, the horse was identified as the one delivered by Bill Stumpf.

The defendant testified as follows: that on February 7, 1975, at approximately 11:30 p.m. she and "Buzz" Feeley were drinking in a Billings bar when a man asked Feeley to help him haul a horse to the Auction Market. Feeley agreed, and the defendant drove her vehicle, accompanied by Feeley and Billy Stumpf, to

-2-

the North Yard where they picked up Feeley's horse trailer. They then followed a dark pickup truck to a pasture near Alkali Creek where both vehicles stopped and the man in the pickup got out, crawled through a fence, and walked up to a horse, putting a halter on the horse, then leading it through a gate, and put it in the horse trailer.

She further testified that while "Buzz" and Billy Stumpf were outside of her car, the stranger came by the driver's window of the car and handed her the bill of sale, saying, "You will need this to sell the horse." The defendant then drove her vehicle, pulling the loaded horse trailer, back to the auction yards where Billy Stumpf unloaded the horse and took it in to the Market.

She further testified that she never saw the stranger again, that she did not call the Auction Market or have a call placed for her, but only delivered the bill of sale on the afternoon of February 8 to the Market because she assumed that they would need it, that she did not introduce herself as Ray Tanner's wife, that she wrote her daughter's name on the back of the bill of sale so she could hold the check until the stranger paid them $15.00 which she claimed he had promised in exchange for hauling the horse to market.

Karla Reichert, the defendant's daughter, testified she knew nothing about the transaction or the bill of sale, and that her mother had never asked her to pick up the check at the Market.

Billy Stumpf's testimony was corroborative of the defendant's except he stated that he was not out of the car at Alkali Creek, while Mrs. Farnes stated that he was when the stranger handed her the bill of sale.

The appeal presents the following issues:

1. Was the evidence sufficient to support the conviction?

2. Did the district court err in refusing to give defendant's offered instructions number 7 and 8?

Mrs. Farnes was charged and convicted of the offense of theft as defined in section 94-6-302(1) which reads as follows:

> "(1)  A person commits the offense of theft
> when he purposely or knowingly obtains or
> exerts unauthorized control over property
> of the owner, and:
> (a) has the purpose of depriving the owner
> of the property; or
> (b) purposely or knowingly uses, conceals,
> or abandons the property in such manner as
> to deprive the owner of the property; or
> (c) uses, conceals, or abandons the property
> knowing such use, concealment or abandonment
> probably will deprive the owner of the
> property."

The term "knowingly" is defined in section 94-2-101(28):

> "A person acts knowingly with respect to
> conduct or to a circumstance described by
> a statute defining an offense when he is
> aware of his conduct or that the circum-
> stance exists.  When knowledge of the
> existence of a particular fact is an
> element of an offense, such knowledge is
> established if a person is aware of a
> high probability of its existence.
> Equivalent terms such as 'knowing' or
> 'with knowledge' have the same meaning."
> (Emphasis supplied)

"Purposely" is defined in section 94-2-101(53) which reads in pertinent part:

"A person acts purposely with respect to
a result or to conduct described by a
statute defining an offense if it is his
conscious object to engage in the conduct
or to cause that result. * * *"

The testimony presented at trial constituted direct evidence of every element of the crime of theft except intent. As in State v. Cooper, 158 Mont. 102, 489 P.2d 99 (1971) the element of intent may be, and generally is, demonstrated by circumstantial evidence. Citing State v. Madden, 128 Mont. 408, 276 P.2d 974 (1954) the Court stated:

"The element of felonious intent in every
contested criminal case must necessarily
be determined from facts and circumstances
of the particular case--this for the reason
that criminal intent, being a state of
mind, is rarely susceptible of direct or
positive proof and therefore must usually
be inferred from the facts testified to by
witnesses and the circumstances as developed
by the evidence * * *

"The question of intent is a question for
the jury."

The rules that govern the weight and sufficiency of circumstantial evidence are set out in the leading Montana case of State v. Cor, 144 Mont. 323, 396 P.2d 86 (1964) at page 326:

"Circumstantial evidence is not always
inferior in quality nor is it necessarily
relegated to a 'second class status' in
the consideration to be given to it. The
very fact that it is circumstantial is not
a sufficient allegation to justify a
reversal of the judgment for such evidence
may be, and frequently is, most convincing
and satisfactory. In any criminal case,
evidence that is material, relevant and
competent will be admitted, 'nothing more
and nothing less'. The test is whether
the facts and circumstances are of such a
quality and quantity as to legally justify
a jury in determining guilt beyond a
reasonable doubt. If such be the case,
then the court should not, indeed cannot,

set aside the solemn findings of the trier
of facts."  (Emphasis supplied)

It is a well-established principle of law that
in a criminal prosecution, the sufficiency of evidence
to prove the main fact of guilt or any evidentiary fact
looking thereto is a matter peculiarly within the
province of the jury.  More specifically, this court has
stated that:

> "The jury being the sole judge of the weight
> to be given to the testimony, the court
> should not tell them what particular weight
> to give to any portion of the testimony."
> State v. Gleim, 17 Mont. 17, 29, 41 P. 998
> (1895).

The rule is that if substantial evidence is
found to support the verdict, then it will stand.
State v. White, 146 Mont. 226, 229, 405 P.2d 761 (1965).
The court in State v. Stoddard, 147 Mont. 402, 408,
412 P.2d 827 (1966), stated:

> First we should note that this court is not
> a trier of fact * * * In view of the
> presumption of innocence at the trial, the
> jury must have been instructed to that
> effect, but on appeal after conviction the
> rule changes.  Then, if the record shows
> any substantial evidence to support the
> judgment, the presumption is in favor of
> such judgment."  p. 408.

In State v. Medicine Bull, Jr., 152 Mont. 34,
445 P.2d 916 (1968), the court held that the jury is
free to consider all the evidence presented and to pick
and choose which of the witnesses they wish to believe.
That if sufficient testimony was introduced to justify
the jury's finding, then their conclusion would not be
disturbed unless there was a clear misunderstanding by
the jury or a misrepresentation made to the jury.

The appellant is guilty of the crime of theft

in this case if she was aware that the horse was stolen or if she was aware of a high probability that the horse was stolen. Under the weakest interpretation of the facts presented by the state, there is substantial evidence from which the jury could find that the defendant was aware of a high probability that the horse was stolen. We find that the evidence is sufficient to support the conviction.

Defendant's second allegation of error would be grounds for reversal of the conviction if the exclusion of defendant's proposed instructions 7 and 8 was erroneous and defendant was prejudiced by such exclusion.

Defendant's proposed instruction number 7 reads as follows:

> "You are instructed that a defendant may not be convicted on conjectures, however shrewd, on suspicions, however justified, on probabilities, however strong, but only upon evidence which establishes guilt beyond reasonable doubt; that is upon proof such as to logically compel the conviction that the charge is true."

Defendant's proposed instruction number 8 reads as follows:

> "You are instructed that proof of illegal asportation is necessary to prove the crime of theft. By illegal asportation is meant the illegal taking of the animal. Therefore if you find that there is no proof beyond a reasonable doubt, that the defendant knowingly participated in the illegal asportation of the animal or proof beyond a reasonable doubt that she knew the animal had been stolen when she presented the bill of sale to the stockyards, she is entitled to an acquittal."

It is an established principle of law in Montana that when examining jury instructions on appeal to

determine if prejudice has occurred by erroneous admission or erroneous exclusion of a jury instruction, all instructions must be read as a whole. State v. Bosch, 125 Mont. 566, 242 P.2d 477. Where jury instructions as a whole correctly state the law prejudice is not created because of a refusal of a proposed instruction. State v. Lukus, 149 Mont. 45, 423 P.2d 49.

Here the jury was instructed as to each of the elements of the crime of theft, as to circumstantial evidence, and as to the standard of proof necessary to convict.

Defendant's proposed instruction number 7 is often given but here the same subject matter was covered in given instructions.

Objection to defendant's proposed instruction number 8 was made on the grounds that it was an incomplete statement of law. Here proof of asportation was not essential to conviction and the jury was instructed as to the element of "control" necessary to convict.

Upon examining all instructions given we find that the jury was properly instructed and defendant was not prejudiced through the court's failure to give defendant's proposed instructions number 7 and number 8.

The appellant further interjected the issue of the admissibility of the telephone call made to the Market approximately one-half hour before the defendant arrived with the bill of sale. The caller was told that a bill of sale would be required before the proceeds of the sale could be paid. Evidence of the contents of the

call did constitute hearsay, but was admissible as an exception to the rule, the call being made as an integral part of an overall criminal transaction. State v. McCracken, 93 Mont. 269, 18 P.2d 302 (1933).

The judgment of conviction is affirmed.

_____
Hon. L.C. Gulbrandson, District
Judge, sitting in place of Mr.
Chief Justice James T. Harrison

We concur:

_____

_____

_____

_____
Justices