THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN WILLIAMS *et al.*, Defendants-Appellants.

First District (5th Division)    Nos. 62617, 76-326 cons.

Opinion filed April 7, 1977.

James J. Doherty, Public Defender, of Chicago (Saul H. Brauner and Thomas F. Finegan, Assistant Public Defenders, of counsel), for appellant Victor Watts.

James Geis and Ira A. Moltz, both of State Appellate Defender's Office, of Chicago, for appellant John Williams.

T. Lee Boyd, Jr., Isaiah S. Gant, and R. Eugene Pincham, all of Chicago, for appellant Willie Nelson.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Paul Benjamin Linton, and Linda Dale Woloshin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

After a trial without jury, defendants John Williams, Willie Nelson and Victor Watts were convicted of armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2). In addition, Williams was convicted of unlawful use of weapons, in that he knowingly possessed a shotgun with a barrel less than 18 inches in length. (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(7).) Nelson was sentenced to a term of 15 to 35 years for armed robbery, and Watts was sentenced to a term of 8 to 15 years for armed robbery. Williams was sentenced to a term of 20 to 45 years for armed robbery, and to a term of one to three years for unlawful use of weapons, his sentences on both convictions to run concurrently.

On appeal, each defendant contends that he did not knowingly and voluntarily waive his right to trial by jury, and that his sentence was excessive. We affirm.

Defendants raise no point concerning the sufficiency of the evidence to justify conviction beyond a reasonable doubt. Therefore, we need only summarize the testimony of witnesses at trial.

The armed robbery for which defendants were convicted occurred at a real estate office in the presence of the owner of the real estate office, his father, an employee, and two clients. After defendants gained entrance into the outer office, Nelson drew the blinds and Williams produced a shotgun and announced a holdup. Williams then found the owner in an inner office, ordered him to lie on the floor, put the shotgun to the owner's head, and told him that he would "blow his brains out" if he did not reveal where the safe was located. The owner responded that he had no safe, and gave Williams about $350 in cash from his pocket. Williams then went to the outer office and ordered the owner's father to lie on the floor. Williams put the shotgun to the father's head, and demanded that he tell him the location of the safe or else he would "blow his brains out." Watts took money from the father's wallet. Williams similarly threatened with the shotgun, and defendants took money from, a woman employee and the two clients. Williams returned to the inner office, again put the shotgun to the owner's head, and demanded to know where the safe was located. Again the owner denied owning a safe, whereupon defendants ransacked the offices and left.

Responding to a radio message of a robbery in progress, two police officers arrived at the scene just as defendants were leaving the real estate office. Watts and Nelson dropped the office equipment they were carrying when they saw the officers. The eqipment was later identified as belonging to the realtor. Defendants then fled in different directions. As Williams ran he pulled the shotgun from under his coat. The police fired a shot at him; Williams dropped the gun, and was apprehended. Additional police arrived and assisted in the apprehension of Nelson and Watts.

Initially, each defendant asserts that the record contains no inquiry of whether he was advised of his right to trial by jury, and that the record is devoid of any colloquy among the trial court, defendant and counsel concerning waiver of this right. Williams contends that the only evidence in the record of "waiver" by him is a signed, but undated, jury waiver form; on the other hand, Nelson and Watts allege that the record contains no written jury waiver executed by either of them. Nelson further asserts that he was never affirmatively asked if he waived trial by jury.

We note that a supplemental record filed with this court discloses that at the commencment of trial, the following colloquy took place in the presence of all defendants and counsel:

> "MR. VISHNY [Counsel for Williams]: In behalf of John Williams, it will be a bench.
>
> MR. ISRAELSTAM [Counsel for Watts]: In behalf of Watts, it will be a bench.
>
> MR. LIVINGSTON [Counsel for Nelson]: In behalf of Willie Nelson, it will be a bench also.

* * *

THE COURT: Let the record show that Mr. William Nelson, is that you?

MR. NELSON: Yes.

THE COURT: You have read this jury waiver?

MR. NELSON: Yes.

THE COURT: Do you know what a jury trial is? That is, where 12 people of this County will be put in a box, and they will hear the evidence in this matter, and they will determine your innocence or guilt in accordance with the law that the Court will give them and instruct them in the matters before the Court? Do you understand that?

MR. NELSON: Yes.

THE COURT: Do you understand that you have a right to a jury or you have a right to waive that jury? Do you understand that?

MR. NELSON: Yes.

THE COURT: And Mr. Watts, do you understand that you have a right to a jury trial? Do you understand that?

MR WATTS: Yes, sir.

THE COURT: And have you read this jury waiver?

MR. WATTS: Yes.

THE COURT: Have you read it where you say, I, the undersigned do hereby waive the jury and submit the cause to the Court? Do you understand that?

MR. WATTS: Yes.

THE COURT: You want the Court to hear this matter, and are you waiving the jury?

MR. WATTS: I want a bench trial.

THE COURT: You want a bench trial?

MR. WATTS: Yes.

THE COURT: You understand that when you take a bench trial that you waive your jury? Do you understand that?

MR. WATTS: Yes.

THE COURT: All right. Let the record show that the defendant, Mr. Victor Watts, has executed a jury waiver in the presence of his counsel.

And you, Mr. Williams, do you know what a jury trial is? I just explained it to Mr. Nelson and Mr. Watts.

MR. WILLIAMS: Yes.

THE COURT: And you know that a jury trial is 12 people sitting in the box who will determine your innocence or guilt? You understand that?

MR. WILLIAMS: Yes.

THE COURT: And you know that you have this right, or you have the right to have the Court hear your case? Which do you wish?

MR. WILLIAMS: Bench.

THE COURT: Have you read the jury waiver, which states, I, the undersigned, do hereby waive a jury trial and submit the above entitled cause to the Court. Have you read that?

MR. WILLIAMS: Yes.

THE COURT: Do you understand it?

MR. WILLIAMS: Yes.

THE COURT: Let the record show that Mr. Williams has executed a jury waiver.

Let the record reflect that the defendants in open court accompanied by their counsel have executed jury waivers and they thereby waive their rights to a jury trial."

■■ Every person accused of a criminal offense has the right to trial by jury unless understandingly waived by him in open court. (Ill. Rev. Stat. 1973, ch. 38, par. 103—6). A waiver of the right to trial by jury need not be in writing. (*People v. Brown* (1958), 13 Ill. 2d 32, 147 N.E.2d 336.) The facts and circumstances of each case are determinative as to whether a jury waiver has been understandingly made. (*People v. Richardson* (1965), 32 Ill. 2d 497, 207 N.E.2d 453.) Further, where a defendant's attorney, in the presence of and without objection from the defendant, waives the defendant's right to trial by jury, the defendant is deemed to have acquiesced in the waiver and is thereby bound by it. *People v. Murrell* (1975), 60 Ill. 2d 287, 326 N.E.2d 762; *People v. Sailor* (1969), 43 Ill. 2d 256, 253 N.E.2d 397; *People v. Lofton* (1976), 42 Ill. App. 3d 211, 355 N.E.2d 674.

In the instant case, in the presence of defendants and without objection, counsel for each defendant stated at the pretrial proceedings that "it will be a bench." There is no reason why the aforementioned rule in *Murrell* should not be applied to the case at bar. Accordingly, we find that each defendant acquiesced in and is bound by his attorney's action, and thereby waived his right to trial by jury.

■■ Here, however, the trial court pursued the matter further and addressed each defendant individually. Each defendant was advised of the function of a jury, and each responded affirmatively when asked whether he understood that he had a right to a jury trial but that he may waive that right. Each defendant answered "yes" when asked if he had read the jury waiver. The trial court then stated that defendants executed jury waivers in the presence of their attorneys. We conclude that each defendant, Williams, Nelson and Watts, understandingly waived his right to trial by jury.

With regard to Williams, the State argued in aggravation that Williams had taken money from a victim, and had placed the shotgun against the heads of several victims stating that he would "blow their brains out" if they did not reveal the location of the safe. The officer who apprehended Williams testified at the hearing in aggravation and mitigation that when he put Williams in the police lock-up, Williams told him, "The next time I see you I will kill you." The officer further testified that on the last day of trial, as he and a fellow officer stood outside the courtroom, Williams approached them and said, "You will be out on the street around 104th and Wentworth, and I will get you."

In mitigation, Williams asserted that he was 18 years old, that he was employed for the last year with a good work record, and that he had no prior convictions.

The trial court, commenting on the "vicious nature" of Williams' actions, sentenced him to a term of 20 to 45 years for armed robbery. He was also sentenced to a term of one to three years on his conviction for unlawful use of weapons. The sentences on both convictions run concurrently.

With respect to Nelson, the State in aggravation reiterated the evidence adduced at trial and submitted to the trial court evidence of Nelson's prior convictions for burglary and attempt theft of services. It was asserted that Nelson had been placed on probation for the burglary conviction for 18 months, and that he violated probation by failing to report to his probation officer and by committing the instant offense 30 days after probation had been granted. The State further noted that at trial Nelson and Watts looked at each other and "cracked up laughing" as each victim identified them from the witness stand.

In mitigation, Nelson asserted that he was still in school and living with his parents, that he worked, and that he played only a minor role in the offense. He was 19 years old at the time of sentencing.

The trial court specifically stated that without a long period of incarceration Nelson could not be rehabilitated into the mainstream of society, and sentenced him to a term of 15 to 35 years for armed robbery.

With regard to Watts, the State in aggravation summarized the evidence at trial concerning his role in the armed robbery, and presented evidence of Watts' prior conviction for attempt theft of services.

In mitigation, Watts stated that he was 19 years old, that he was both working and going to school, and that he comes from a large family that recently lost its father.

The trial court specifically stated that Watts seemed remorseful and repentant, and that he cried before any of the sentences were imposed. Watts was sentenced to a term of 8 to 15 years for armed robbery.

■■■ In sentencing it is proper for a trial court to consider the

seriousness of the crime, the failure of defendants to show a penitent spirit, prior convictions, and the general moral character of the offenders. (*People v. Morgan* (1974), 59 Ill. 2d 276, 319 N.E.2d 764.) A trial court is ordinarily in a position superior to a reviewing court to make a sound determination as to the punishment to be imposed. (*People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673.) A reviewing court should be reluctant to interfere with the determination of the trial court in this respect, and not interfere merely because the reviewing court itself might have imposed a different sentence. (*People v. Young* (1975), 30 Ill. App. 3d 176, 332 N.E.2d 173.) We find that the sentence imposed upon each defendant was within the limits prescribed by statute, and that the trial court did not abuse its discretion.

For the foregoing reasons, the judgment of conviction and sentence imposed by the circuit court with respect to each defendant, Williams, Nelson and Watts, is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.