THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.*
CHARLES McCARTNEY, DEFENDANT AND APPELLANT.

No. 14058.
Submitted June 8, 1978.
Decided Nov. 8, 1978.
585 P.2d 1321.

Bradley B. Parrish, argued, Lewistown, for defendant and appellant.

Mike Greely, Atty Gen., Charles R. Anderson, Asst. Atty. Gen., argued, Helena, William J. Spoja, County Atty., Robert Knopp, Deputy County Atty., argued, Lewistown, for plaintiff and respondent.

MR. CHIEF JUSTICE HASWELL delivered the opinion of the Court.

Defendant appeals from his conviction by the District Court, Fergus County, after a nonjury trial before Judge LeRoy L. McKinnon. Defendant was charged with one count of felony theft and one count of felony forgery. The trial court found defendant guilty of both crimes and sentenced him to five years in the state penitentiary, with four years suspended. On appeal, defendant contends that the state failed to prove the elements of felony theft for forgery, that the evidence was insufficient to sustain the judgment of conviction, and that he was tried by the District Court without properly having waived his right to trial by jury.

The facts, essentially undisputed, are as follows:

In April 1970, defendant and James T. Johnson entered into a cattle sharing agreement which provided that defendant was to receive 60 percent and Johnson 40 percent of the yearly calf production from cows owned by Johnson which were to be pastured on land leased by defendant. The calves were to be branded in the spring with Johnson's 3-Lazy T brand and the 60-40 split was to be made when the calves were sold in the fall.

The agreement ended in 1974 and the remaining calves were apparently sold at that time. Defendant thereafter sold his ranch. In 1975, a cow was found on property owned by the Ayers Hutterite colony, which bordered the land defendant had leased. The cow carried Johnson's brand. The president of the Ayers colony, John Stahl, believing the stray belonged to defendant, approached defendant about purchasing the cow. Defendant agreed to sell, and made out a bill of sale on November 26, 1976. Defendant signed

Johnson's name as "seller" and his own name as "witness" on the bill of sale. Defendant also drew a Lazy T in the middle of a 3, as the brand of the cow to be sold, on the bill of sale. That brand was similar to Johnson's 3-Lazy T brand. The Ayers colony promised defendant some beef as consideration for the sale.

On March 1, 1977, Stahl checked with the brand office in Lewistown about the Lazy T in the middle of a 3 brand. He had noticed the cow's brand did not match that brand as drawn by defendant on the bill of sale. Stahl was told the brand on the bill of sale was not Johnson's brand and he then called defendant who told him to "put on the other brand". Stahl assumed defendant meant Johnson's 3-Lazy T brand.

On March 2, 1977, Stahl sold the cow at the Central Montana Livestock Market for $241. The brand office thereafter contacted Johnson, and upon learning he had not sold the cow, began an investigation of the transaction. Defendant was charged and arrested for theft and forgery, both felonies, as a result of that investigation.

Defendant first contends he had neither actual nor constructive possession of the cow prior to its sale and did not deliver the cow to anyone and therefore cannot be guilty of theft. Under the old criminal code provisions and cases interpreting them the State had to prove a defendant took possession of another's property and carried it away to secure a larceny conviction. Defendant cites cases to that effect and Am.Jur.2d comments concerning the classic elements of larceny. The classic taking and carrying away, however, has not been continued in the criminal codes under which defendant was convicted.

Section 94-2-302, R.C.M. 1947, provides in pertinent part:

"*Theft*". (1) A person commits the offense of theft when he purposely or knowingly obtains or exerts unauthorized control over property of the owner and:

"(a) has the purpose of depriving the owner of the property;

"(b) purposely or knowingly uses, conceals, or abandons the property in such manner as to deprive the owner of the property . . ."

Section 94-2-101(32, R.C.M.1947, defines "obtain" as:

"(a) in relation to property, to bring about a transfer of interest or possession whether to the offender or to another."

Section 94-2-101(33), R.C.M.1947, provides:

"'Obtains or exerts control' includes but is not limited to the taking, or carrying away, or sale, conveyance, transfer of title to, interest in, or possession of property."

The Commission comment to section 94-6-302, provides in part:

"After extended and exhaustive study and consideration by the commission, matching various combinations of the subsection to cover every type of conduct proscribed by the old law, and extending such matching to conduct covered by statutes in other states, it is believed this section will cover any conceivable form of theft.

". . .

". . . the method by which unauthorized control is obtained or exerted is immaterial in subsection (1) . . ."

It is clear that these statutes encompass more than the actual taking and asportation of another's property. This state has adopted its code provisions from Illinois. The precursor of section 94-6-302, is Chapter 38, § 16-1 of the Illinois Criminal Code. In discussing the scope of "theft" under this statute, the Illinois Court stated in *People v. Nunn* (1965), 63 Ill.App.2d 465, 212 N.E.2d 342, 344:

"Section 16-1(a)(1) is not limited to the theft of property in which only the actor who initiates the wrongful asportation is guilty of the offense. A person who 'knowingly obtains or exerts unauthorized control over property of the owner' is the statutory description of a thief, provided only that his act is accompanied by the requisite mental state. As expressly pointed out in section 15-8, the phrase 'obtains or exerts control' over property includes, but is not limited to, the taking or carrying away of the property. It also includes (though still not exclusively) the bringing about a transfer of possession of the property."

In *People v. Petitjean* (1972), 7 Ill.App.3d 231, 287 N.E.2d 137, the court held the theft statute included the wrongful sale or con-

veyance of property and was not limited to theft of property in which only the actor who institutes the wrongful asporation is guilty of the offense.

■ In the present case, the State proved that defendant brought about a transfer of title and possession of James E. Johnson's cow to one other than the owner through a wrongful sale which resulted in depriving James E. Johnson of his property. If the requisite mental state is proven along with this, no more is required under section 94-6-302.

■ Defendant's next contention is that the State did not prove he acted knowingly or purposely with respect to obtaining or exerting unauthorized control over Johnson's cow. He contends in essence the District Court was required to accept his testimony which was plausible, and therefore the testimony negated any finding by the District Court that he had the requisite mental state. There was however, sufficient circumstantial evidence for the trial court to conclude otherwise.

Defendant testified that in the spring of 1970 or 1971, he branded a calf with the 3-Lazy T brand believing the calf was from one of Johnson's cows. Two weeks later he saw the calf following one of his own cows. Realizing he had been mistaken as to the calf's origin, defendant branded it again, this time with one of his own brands. When Stahl called him about the stray in 1976, defendant thought it was the twice branded cow. He further testified he signed Johnson's name as "seller" on the bill of sale because he thought the 3-Lazy T would "show up better" than his own brand when the cow was examined. He wanted the seller's name to conform to the most legible brand. Defendant also asserts that when he told Stahl to "put the other brand" on the bill of sale, he meant his own brand, not Johnson's. The entire episode, according to defendant, was a mistake compounded by misunderstanding.

On the other hand, the circumstantial evidence negating this misunderstanding, includes: defendant's failure to ask Stahl whether the stray had two brands when he was told of the cow's discovery; defendant's failure to mention the twice-branded cow

story when Stahl called him about the brand discrepancy; defendant's drawing of a brand similar to Johnson's rather than his own on the bill of sale; defendant's signing of Johnson's name on the "seller" line and his own name on the "witness" line on the bill of sale; and defendant's failure to apprise Johnson of the situation at any time before or after the sale. We note moreover, that defendant had experience as a brand inspector and knew that the brand drawn on the bill of sale must be that of the animal's seller as listed on the bill of sale.

Clearly, under these circumstances, the determination of intent was to be made by the trial court as the trier of fact. As we stated in *State v. Farnes* (1976), 171 Mont. 368, 558 P.2d 472, 475.

"The element of felonious intent in every contested criminal case must necessarily be determined from facts and circumstances of the particular case—this for the reason that criminal intent, being a state of mind, is rarely susceptible of direct or positive proof and therefore must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence . . ."

Here, the District Court resolved the question of intent against defendant.

■ Defendant makes essentially the same argument concerning his forgery conviction as he did concerning his theft conviction, namely, that the State failed to prove he had the purpose of intent to defraud Johnson and therefore that his conviction of forgery was improper. The section under which defendant was charged, section 94-6-310, R.C.M.1947, provides in relevant part:

"(1) A person commits the offense of forgery when, with purpose to defraud, he knowingly:

"(a) without authority makes or alters any document or other object apparently capable of being used to defraud another in such manner that it purports to have been made by another or at another or at another time, or with different provisions, or of different composition . . ."

The trial court was not bound to believe defendant's version that

he signed Johnson's name because of his mistaken belief the stray was the twice-branded cow. There was sufficient circumstantial evidence for the trial court to conclude otherwise.

Defendant's last contention is that his waiver of jury trial, although knowingly and voluntarily made, was ineffective because it was not reduced to writing and signed by both him and the prosecutor as required by section 95-1901(d), R.C.M.1947. That statute provides: "Upon written consent of the parties a trial by jury may be waived." This statute was enacted to implement 1972 Montana Constitution, Art. II, § 26, which provides in part:

"The right of trial by jury is secured to all and shall remain inviolate. But upon default of appearance or by consent of the parties expressed in such manner as the law may provide, all cases may be tried without a jury . . ."

Defendant argues his trial was a nullity because his waiver of a jury trial was not in accordance with section 95-1901(d). We note this issue is raised for the first time on appeal and as explanation, defendant states in his brief:

"He [defense counsel] did not become aware of this requirement until doing research for this Brief and it appears that Respondent did not know of this requirement either. In other words, this requirement came as a complete surprise to writer and because it was a surprise it was never put forth as an argument on the possible motion for a new trial or other post-conviction relief."

Under the circumstances present here, we cannot conclude that section 95-1901(d) is such mandate that failure to comply with its provisions rendered the trial a nullity. Defendant does not contend that no knowing and intelligent waiver was made. His brief on appeal admits that his intention was to waive his right to trial by jury. He knew that such a waiver was available to him and he knowingly undertook to exercise it. When the trial began before the court with a vacant jury box, no objection was raised. At no time during the course of the ensuing proceedings did defendant complain of the absence of a jury.

Defendant elected to take his chances with a trial before the

court as the trier of fact but now, after an adverse verdict, attempts to assert his right to trial by jury. This change of position defendant seeks to justify on the strength of an irregularity occasioned as much by his own noncompliance with the governing statute as by any failure on the part of the state. This we cannot permit.

■ We conclude that the proper approach to follow in this situation is to examine the totality of the circumstances to determine whether the defendant did, in fact, make a voluntary and intelligent waiver. In so doing, we by no means question the validity of section 95-1901(d), but only find that it does not have the effect of rendering a nullity the trial held here. We conclude that the primary objective of the statute (that is, guaranteeing a knowing and voluntary waiver) has been met and accordingly in this situation, there has been no violation of defendant's constitutional right to trial by jury.

The judgment is affirmed.

MR. JUSTICES DALY, HARRISON and SHEEHY concur.

MR. JUSTICE SHEA dissenting:

I would reverse the conviction because the record is barren of the required express personal waiver of the jury trial.

It is unfortunate that neither party nor the Court came to grips with the true issue in this case, namely, whether the defendant personally waived his right to a jury trial. The defendant asserts, on a narrow technical ground, that the trial is a nullity because he and the State did not sign a written waiver of a jury trial as provided for in section 95-1901(d), R.C.M.1947. Clearly, if the *record* demonstrated a personal waiver by the defendant, regardless of whether he signed a jury waiver agreement, the purpose of the statute was fulfilled. *People v. Stolofo* (1977), 46 Ill.App.3d 616, 5 Ill.Dec. 101, 361 N.E.2d 101; *People v. Williams* (1977), 47 Ill.App.3d 798, 8 Ill.Dec. 1977, 365 N.E.2d 415. Here, however, the record does not support a personal waiver.

The State, on the other hand, relying on *People v. Stolfo*, supra, and *People v. Williams*, supra, contends the express provisions can

be waived. In each of these cases the Court held the purpose of the statute was fulfilled because the record expressly set forth that defendant personally waived his constitutional right to a jury trial.

In the instant case, because there was no record showing personal waiver, the reasoning as set forth in *U. S. v. McCurdy* (9th Cir. 1971), 450 F.2d 282, should control:

"In *United States v. Guerrero-Peralta*, 446 F.2d 876 (9th Cir. 1971), this court recently considered the requirements for a valid waiver of jury trial under Rule 23. There we held that a twelve-member jury *could not be waived by a stipulation of counsel, the defendant being present but silent*. Rule 23(b). We noted that the purpose of a writing under Rule 23 is to provide 'the best record evidence of the *express* consent of a defendant' (Emphasis in the original). We then stated: 'Express consent given orally by the defendant personally and appearing on the record, may be equally good evidence, but that much, as a minimum, must appear.'" (Emphasis added.) *U. S. v. McCurdy*, supra at 283.

In applying this rule to the facts of the case, the Court continued:

"Ideally, counsel in the present case would have called to the attention of the trial judge the provisions of Rule 23, and McCurdy's signature on the appropriate form would have been obtained. *However, there was an intelligent, knowing, and express waiver by the defendant in open court, with the consent of both counsel, and with the approval of the trial judge given after appropriate questioning of the defendant.* Where such a waiver is spread upon the record we hold that there has been compliance with Rule 23(a). (Citing cases)." (Emphasis added.) *U. S. v. McCurdy*, supra at 283.

The majority opinion has ignored the controlling law on the proof required to show waiver of a constitutional right. In *Carnley v. Cochran* (1962), 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70, the following requirement was set forth to prove waiver of a constitutional right:

"The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is

not waiver." *Carnley v. Cochran*, supra at 516, 82 S.Ct. at 890.

It is clear therefore, the *record* in this case must, at a minimum, show defendant was offered the right to a jury trial but intelligently and understandingly rejected the offer of a jury trial. Here, the record is devoid of an offer of a jury trial to defendant and of his subsequent rejection of a jury trial.

It should be noted moreover, the majority has ignored those standards of waiver succinctly summarized in the case of *State v. Lucero* (1968), 151 Mont. 531, 445 P.2d 731, where stated:

"The constitutional right to counsel and the constitutional right against self-in-crimination may, of course, be waived. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; *Escobedo v. State of Illinois*, [378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977] supra; *Miranda v. State of Arizona*, supra. However, such waiver must be made voluntarily, knowingly, and intelligently or it is ineffective. *Escobedo v. State of Illinois*, supra; *Miranda v. State of Arizona*, supra. The prosecution has the burden of proof of waiver of constitutional rights. *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70. This burden of proof is heavy and the standards required for waiver are high. *Miranda v. State of Arizona*, supra. Courts indulge in every reasonable presumption against waiver of constitutional rights and will not indulge in any presumption of waiver. *Johnson v. Zerbst*, supra; *Brookhart v. Janis*, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314; *Emspak v. United States*, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997; *Carnley v. Cochran*, supra." *State v. Lucero*, supra, at 538, 445 P.2d at 735.

It is unfortunate this Court can so easily ignore these rules in refusing to apply them to the facts of this case. Apparently these rules will only again be resurrected to some form of viability when our mood so dictates. We should not be so cavalier with basic constitutional principles.

Based on the foregoing constitutional principles, I fail to see how this Court can justify its decision based on the total circumstances rule. It is noteworthy that the majority does not allude to one instance in the record where the defendant personally waived his

right to a jury trial. Indeed, there are only two minute entries in the Court file relating to the question of whether trial was to be by jury or non-jury, and neither of them supports the majority's position. Defendant was arraigned on May 26, 1977 (the record of the arraignment is not before us) and the minute entry of the Clerk of Court for that date states: "Case set for Jury Trial, July 20, 1977 at 10:00 a.m." Thereafter, on July 20, 1977, without any indication of what proceedings were held, the Clerk of Court made the following minute entry: "Trial date vacated and reset for August 3, 1977, 10:00 a.m. without a jury." Did the Clerk made this entry at the direction of the District Court judge or at the request of an attorney for one side or the other? Was the defendant present in court on that day? What evidence is there that the defendant personally participated in the decision that the trial was to be non-jury? The record is silent.

The majority concludes the "defendant does not contend that no knowing and intelligent waiver was made. His brief on appeal admits that his intention was to waive his right to trial by jury." It is however, the State's burden to prove that the record supports a finding that defendant made an intelligent and knowingly waiver of his right to jury trial. The State did not and cannot meet that burden. Furthermore, the defendant did not prepare and sign his brief on appeal; his counsel did. Under the circumstances here, it is manifestly unfair to bind the defendant to statements made by his counsel in the brief. How do we know that defendant even knew what his counsel said in the brief? It is not for defense counsel to waive his client's rights to a jury trial; it is for the defendant personally to make that decision. Defense counsel did not admit in his brief that his client made a voluntary, intelligent and knowing waiver of his right to a jury trial. If the record does not clearly reflect a waiver, this Court should not cure such defect by implying a waiver.

Nor is the absence of a jury upon the commencement of the trial sufficient to hold that defendant waived his right to a jury trial. If the trial court wanted to proceed without a jury, it would have been a simple matter to inform defendant of his right to a jury trial and then question him as to his intention to waive that right. The

circumstance of proceeding with a non-jury trial without an objection from defendant, would, at most be an implied waiver, and it is clear that to be effective the waiver must be express. *Carnley v. Cochran*, supra; *State v. Lucero*, supra, and spread upon the record, *U. S. v. McCurdy*, supra.

This is the kind of a case where bad law is being made solely because the Court is more concerned with the result it reaches than it is with the logic by which it has reached the result. By refusing to apply the applicable constitutional standards to the facts of this case, this Court has demonstrated that we are treating each case on an ad hoc basis, hardly an appropriate standard of appellate review.