**Donald SULLIVAN, Jr., Petitioner–Appellant,**

v.

**Terry PITCHER, Warden, Respondent–Appellee.**

No. 01–2681.

United States Court of Appeals, Sixth Circuit.

Nov. 18, 2003.

Donald Sullivan, Jr., pro se, Detroit, MI, for Petitioner–Appellant.

Janet A. Van Cleve, Office of the Attorney General, Lansing, MI, for Respondent–Appellee.

Before: SILER, BATCHELDER, and COOK, Circuit Judges.

## PER CURIAM.

Petitioner Donald Sullivan, Jr. appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. The issue certified for appeal by the district court is whether Sullivan "was deprived the right to counsel at a critical stage of his proceedings, namely, during his guilty plea proceeding, without having made a knowing or intelligent waiver of the right to counsel." We affirm.

## BACKGROUND

Sullivan is a Michigan prisoner serving sentences of twenty-two to fifty years for second-degree murder, and two years for possession of a firearm in the commission of a felony. He was originally charged with two counts of first-degree murder, armed robbery, and felony firearm possession. He was arraigned in 1993 but did not proceed to trial until 1997. Over that four-year period he was represented by six lawyers and appeared before four judges.

At his arraignment before Judge Boyle of the Detroit Recorder's Court in 1993 he discharged his appointed counsel, Jeffrey Collins. The court then appointed John Brusstar to represent him. In 1994, however, Sullivan appeared before Judge Boyle and expressed his desire to represent himself, though with the assistance of Brusstar. Judge Boyle found Sullivan's decision to waive his right to counsel to be "knowing and intelligent."

Over the course of the next several years, Sullivan was represented by five more attorneys. Each either moved to

withdraw on the basis of breakdowns in the attorney-client relationship or was fired by Sullivan.

During the same period, Sullivan succeeded in having his case reassigned to a new judge on four separate occasions. He accomplished this largely by filing a series of individual complaints with the Judicial Tenure Commission. At last, his case was assigned to Chief Judge Jones of the Detroit Recorder's Court. Judge Jones cautioned Sullivan that "unless [she] die[d], [she was] going to be the last judge" that he would see in Recorder's Court. Judge Jones offered Sullivan one last chance: be appointed one last lawyer or try the case himself. Sullivan chose the first option.[1]

When Sullivan's trial commenced, he refused to enter the courtroom and refused to allow new counsel, Lance Cooper, to represent him. Judge Jones insisted that the trial move forward, conducted voir dire herself, placed Sullivan in an audible lockup, and instructed the prosecution to deliver its opening statement. At each break in the proceeding, and after each prosecution witness, Judge Jones offered Sullivan the opportunity to cross-examine. Cooper was ordered to remain in the courtroom to serve as standby counsel and in case Sullivan changed his mind about wanting Cooper to represent him.

On the fourth day of trial the prosecution announced that Sullivan had a plea agreement.[2] Judge Jones read through a list of rights that Sullivan was relinquishing by virtue of the plea, and Sullivan acknowledged that he understood. The list of questions posed by Judge Jones did not include the right to counsel, however. After Sullivan pleaded guilty and confess-

ed to robbing and killing the victim, the prosecutor then posed a series of questions tending to show that Sullivan was well-versed with the criminal law and had extensive experience with the judicial system.

Judge Jones accepted the plea agreement and the plea of guilty.

## STANDARD OF REVIEW

"This court applies de novo review to the decision of the district court in a habeas corpus proceeding." *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir.2003)(quoting *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir.2000)). Because Sullivan filed his federal habeas corpus petition after Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified principally at 28 U.S.C. § 2254(d), normally he would be entitled to a writ only if the state court's adjudication of the claim on the merits either

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■ "Where, [however], as here, the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply." *Maples*, 340 F.3d at 346 (citing *Williams v. Coyle*, 260 F.3d 684, 706 (6th

---

1. This attorney, Rose Mary Robinson, was the fifth lawyer to be appointed. Despite Judge Jones's admonition that Robinson would be the last, she later allowed Robinson to with-

draw and appointed a sixth (and final) attorney, Lance Cooper.

2. Petitioner pled guilty to second-degree murder and felony firearm possession.

Cir.2001)).[3] Instead, we review de novo. *Wiggins v. Smith,* — U.S. ——, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

## DISCUSSION

■ Sullivan was entitled to counsel when he entered his plea. The Supreme Court has routinely found constitutional error without any specific showing of prejudice when a defendant is deprived of counsel during a "critical stage" of criminal proceedings, *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), and a plea hearing is a "critical stage." *Boyd v. Dutton,* 405 U.S. 1, 2, 92 S.Ct. 759, 30 L.Ed.2d 755 (1972).

■ It is debatable whether Sullivan was denied counsel at all because Cooper, nominally standby counsel, provided substantial assistance at the plea stage. For example, Cooper delivered the plea form to Sullivan in the lockup where he was being held and also acted as intermediary in the plea negotiations with the prosecutor. Moreover, the court inquired—and Sullivan acknowledged—that he had spoken to Cooper about the plea and had received advice. Finally, Cooper spoke on the record during the plea proceeding. For these reasons, Cooper's substantial involvement at the plea stage was sufficient to satisfy the Sixth Amendment. *See United States v. Oreye,* 263 F.3d 669, 672–73 (7th Cir.2001)(doubting "whether there had been a denial of counsel ..., because [standby counsel], while labeled standby counsel, was functionally counsel, period").

■ In any event, to the extent that Cooper's assistance did not satisfy Sullivan's Sixth Amendment right to counsel, Sullivan effected a knowing and intelligent waiver of that right, as is required under

*Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)("In order to represent himself, the accused must 'knowingly and intelligently' forego [the benefits of counsel].") While it is true that before accepting Sullivan's plea, Judge Jones did not make an extended, formal inquiry respecting Sullivan's desire to proceed pro se, such a formal inquiry is not a sine qua non of constitutional waiver. *See United States v. McDowell,* 814 F.2d 245 (6th Cir.1987).

The relevant method, rather, requires a "nonformalistic approach to determining sufficiency of the waiver from the record as a whole." *Id.* at 249. Taking such an approach, there is only one conclusion: Sullivan was acutely aware of his right to counsel and the risks of proceeding pro se, and his waiver of that right and his decision to proceed in the face of such risks was undeniably "knowingly and intelligently" made. The reasons are as follows.

First, Judge Boyle initially impressed upon Sullivan the risks of proceeding pro se and questioned him on the issue at great length. Second, Sullivan's background and experience weigh in favor of waiver. Clearly, he is a bright man and a very capable litigant who had prior experience with the criminal justice system and who had a working knowledge of the law. At one point in the proceedings he claimed previous work experience as a paralegal for a criminal law firm. Third, while he was not cautioned at *every* appearance of the dangers of proceeding without counsel, the various judges did revisit the issue intermittently. Fourth is the context of the waiver. In circumstances such as the instant one—when all the evidence supports the conclusion that the Sixth Amend-

---

**3.** Whether the Sixth Amendment claim was, in fact, properly raised in state court is subject to debate, thus raising questions of proce-

dural default. Nonetheless, because the district court ruled on the merits, so do we.

ment is being used not as a shield but as a sword—other courts have not hesitated to find waiver through conduct. *See, e.g., United States v. Irorere,* 228 F.3d 816, 826 (7th Cir.2000)(noting that "a defendant may waive his right to counsel through his own contumacious conduct"); *United States v. Goldberg,* 67 F.3d 1092, 1110 (3d Cir.1995)(describing waiver by conduct as a "hybrid" situation that combines elements of waiver and forfeiture).

**AFFIRMED.**