Justice Jim Rice, dissenting.
¶50 The Court holds that under "the circumstances of this case, Salsgiver's nonappearance at the omnibus hearing waived his state right to a jury trial under the 'default of appearance' provision of Article II, Section 26 on both charges." Opinion, ¶ 25. I would reach the same conclusion regarding waiver under federal constitutional analysis.
*517 ¶51 As the Court correctly notes, the right to a jury trial under the Sixth and Fourteenth Amendments of the United States Constitution may be waived by a defendant. Duncan , 391 U.S. at 158, 88 S. Ct. at 1452 ; Patton , 281 U.S. at 310, 312, 50 S. Ct. at 262-63 ; see also State ex rel. Nelson v. Mont. Ninth Judicial Dist. Court , 262 Mont. 70, 73, 77, 863 P.2d 1027, 1029, 1031 (1993). A waiver must be made knowingly, intelligently, and voluntarily, but a determination of a proper waiver depends on the "particular facts and circumstances" of each case, "including the background, experience, and conduct of the accused." Johnson , 304 U.S. at 464, 58 S. Ct. at 1023. "[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." Adams v. United States ex rel. McCann , 317 U.S. 269, 278, 63 S. Ct. 236, 241, 87 L.Ed. 268 (1942). The U.S. Constitution does not require that courts engage in a colloquy to ensure defendants understand the effect of waiving their right to trial by jury, United States v. Cochran, 770 F.2d 850, 851 (9th Cir. 1985) ; see also Walker , ¶¶ 33-34, and, indeed, a **76 waiver of the jury right is recognized by the U.S. Supreme Court as an "abandonment of a known right or privilege." Johnson , 304 U.S. at 464, 58 S. Ct. at 1023.
¶52 Following his arrest on the charges, Salsgiver was arraigned on March 18, 2015, and was orally advised by the Municipal Court of his right to jury trial, as well as his other rights. During the arraignment, Salsgiver signed a statement of rights, in which he acknowledged his right to a jury trial in writing. Additionally, Salsgiver signed the Order on Conditions of Release, which, in bold and underlined typeface, virtually screamed to Salsgiver that he must "Personally appear for all court proceedings. Failure to appear shall result in a waiver of jury trial," and, immediately following, similarly advised Salsgiver in bold and underlined typeface that his next scheduled court hearing was "Tuesday, May 5, 2015 at 01:30 PM." Copies of the Order on Conditions of Release were sent to Salsgiver, his attorney, and the Detention Center.
¶53 On March 23, 2015, the Municipal Court issued an Omnibus Order, which indicated in bold and italicized typeface, that "[t]he defendant must attend all court appearances and notify the court of any change of address in writing." In conjunction therewith, the Municipal Court also issued a Notice of Omnibus indicating the date, time, and location of the omnibus hearing, and reiterating in emphasized bold typeface and all capital letters, as quoted by the Court, Opinion, ¶ 5 n.1, that Salsgiver's personal presence was required and that "failure to appear will result in a waiver of jury trial." These documents were delivered to Salsgiver's counsel.
¶54 On May 5, the Municipal Court convened to conduct the omnibus hearing as it was scheduled and noticed, but despite the clear directives explained above-expressed as clearly to Salsgiver as the Municipal Court could possibly express them-Salsgiver blew it off. This is so because, in addition to these stark advisories by the Municipal Court, Salsgiver had also been clearly ordered, for which he acknowledged his understanding by signature, to maintain "weekly contact" with his appointed counsel and to immediately notify both his counsel and the Municipal Court of any change in his circumstances, including his address, contact information, and employment. However, at the omnibus hearing, neither Salsgiver's counsel nor the Municipal Court had any information about Salsgiver's location or circumstances. Indeed, at that point, a pending motion filed by the Office of Public Defender sought to rescind the appointment of counsel for Salsgiver because of his failure to provide an eligibility application. Salsgiver had kept everyone in the dark. Thus, Salsgiver blew off the omnibus **77 hearing, quite intentionally, choosing not to participate in any fashion with the Municipal Court or his counsel. Consequently, the Municipal Court issued a warrant to again arrest Salsgiver, this time for his violation of the conditions of his release and to perhaps secure his presence for his own trial. The court also ruled that Salsgiver had waived his right to a jury trial, and set the matter for a bench trial.
¶55 But the process before the Municipal Court did not result in an "automatic waiver."
*518 Opinion, ¶ 28. Salsgiver had the opportunity to explain his violation of the court's orders, and seek reinstatement of his jury trial. When he was arrested pursuant to the warrant on October 15, 2015, the bench trial had been set for November 12, 2015. On October 28, 2015, almost six months after he failed to attend the omnibus hearing, Salsgiver filed a motion to reinstate his jury right. However, Salsgiver's motion offered no explanation whatsoever for his disobedience of the court's orders and for his failure to participate in the process.[1] Salsgiver offered no explanation because the record was clear that he had no legitimate excuse. Instead, he argued-in contradiction to the record-that there was "no evidence" he had knowingly, intelligently, and voluntarily waived his right to trial by jury.
¶56 Important in the consideration of all the circumstances is that these proceedings occurred in a limited jurisdiction court that processes thousands of misdemeanor cases each year.[2] That is not to say constitutional rights in limited jurisdiction courts or in misdemeanor prosecutions are any less critical than in felony prosecutions conducted in general jurisdiction courts. Rather, it is one circumstantial factor that must be understood to properly apply the right. Without a doubt, limited jurisdiction courts would collapse under the workload if they were required to conduct a jury trial for every defendant who initially requested one. There are simply not enough **78 hours in the year within all the courts of the State to do so. Instead, there must be an efficient and constitutional method of case processing that permits the winnowing down of jury trial requests to those that are appropriate jury cases, whether serious or petty offenses. In my view, a jury-appropriate case requires a defendant who is participating in the process, and not actively running away from it. The system employed by the Kalispell Municipal Court ensured the jury right for all such defendants. In contrast, a defendant who is running from the process is engaged in the "abandonment of a known right or privilege." Johnson , 304 U.S. at 464, 58 S. Ct. at 1023. It should not be incumbent upon the state to track down a non-cooperating defendant and force-feed a jury trial to him.
¶57 This view is widely supported by state and federal law. Fundamental rights may be waived by a person's conduct. See State v. McCartney , 179 Mont. 49, 55-56, 585 P.2d 1321, 1325 (1978) (defendant knowingly and voluntarily waived his right to a jury trial when he did not raise an objection before or during the bench trial) (overruled by statute in State v. Dahlin , 1998 MT 113, ¶ 23, 289 Mont. 182, 961 P.2d 1247 ; State v. McCarthy , 2004 MT 312, ¶ 32, 324 Mont. 1, 101 P.3d 288 ) (holding that the fundamental right to be present at trial can be waived by failing to appear); State v. Thompson , 2015 MT 279, ¶ 19, 381 Mont. 156, 364 P.3d 1229 (holding that failure to appear is good cause for delay to the fundamental right to a speedy trial); State v. Luke , 2014 MT 22, ¶ 19, 373 Mont. 398, 321 P.3d 70 (holding that failure to appear is good cause for delay to the fundamental right to a speedy trial); Allen , 397 U.S. at 343, 90 S. Ct. at 1060-61 (holding that a defendant can lose his fundamental right to be present at trial "if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom."); United States v. Goldberg , 67 F.3d 1092, 1100 (3d Cir. 1995) (holding that continued dilatory tactics by defendant, after being warned by the court, may result in loss of the right to counsel through waiver by conduct); United States v. Thomas , 220 F. Supp. 2d 430, 433 (W.D. Pa. 2002) (noting that "a defendant *519 can, under certain circumstances, be deemed to have forfeited or waived his Sixth Amendment right based upon his conduct."); Sullivan v. Pitcher , 82 F. App'x 162, 166 (6th Cir. 2003) (concluding that "other courts have not hesitated to find waiver through conduct."); State v. Hampton , 208 Ariz. 241, 92 P.3d 871, 874 (2004) (stating that "[e]ven in the absence of an express **79 waiver, a defendant can implicitly waive his right to counsel through his conduct.").
¶58 I would conclude, in contrast to the Court, Opinion, ¶ 29, that, under the Sixth Amendment, the totality of the circumstances demonstrates that Salsgiver knowingly, intelligently, and voluntarily waived his right to a jury trial by his conduct, which overcame the presumption against waiver. Salsgiver "abandon[ed] ... a known right or privilege." Johnson , 304 U.S. at 464, 58 S. Ct. at 1023. He was clearly informed, and he acknowledged in writing, that he had a right to a jury trial and that he was required to personally appear at all court proceedings, the failure of which would result in the waiver of his jury right. As I believe the record makes clear, Salsgiver blatantly failed to do so by choice, violating court orders and keeping everyone in the dark, and his conduct brought about the very result of which he was repeatedly warned. When given the opportunity, he could offer no excuse for his conduct. "It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct"-which includes appearing at required proceedings for which notice has been given-"should not and cannot be tolerated." Allen , 397 U.S. at 343, 90 S. Ct. at 1061. See also State v. Couture , 2010 MT 201, ¶ 99, 357 Mont. 398, 240 P.3d 987 (discussing the negative effects that noncompliant parties have on trials).
¶59 Salsgiver's arguments insist he should be entitled to a jury trial until such time as he decides he no longer wants one, regardless of his own actions or the impact of those actions. However, the courts should not be held captive to the whims of voluntarily non-cooperating, non-participating parties.
¶60 I dissent from Issue 1, and would affirm the conviction.
Justice Beth Baker joins the dissenting Opinion of Justice Rice.

The Court acknowledges this point, Opinion, ¶ 25, which clearly distinguishes this case from cases such as Girard , 2013 MT 168, 370 Mont. 443, 303 P.3d 1283, in which a defendant's failure to appear is justified. In Girard , the justification was medical issues evidenced by the Defendant's medical records and an affidavit from a health care provider.

In 2018, there were 5,468 misdemeanor criminal cases filed in the Kalispell Municipal Court, and 212,758 misdemeanor criminal cases were filed in limited jurisdiction courts statewide. Montana Courts of Limited Jurisdiction, Calendar Year 2018 Criminal Violations Filed , https://courts.mt.gov/Portals/189/lcourt/stats/2018/crimviolations.pdf (last visited May 29, 2019).