**UNITED STATES of America ex rel. John WILLIAMS, Petitioner-Appellee,**

v.

**Richard DeROBERTIS, et al., Respondents-Appellants.**

No. 82–2497.

United States Court of Appeals, Seventh Circuit.

Argued May 10, 1983.

Decided Aug. 19, 1983.

Certiorari Denied Jan. 16, 1984.

See 104 S.Ct. 982.

Marcia L. Friedl, Atty. Gen. of Ill., Chicago, Ill., for respondents-appellants.

Ann C. Tighe, Cotsirilos & Crowley, Chicago, Ill., for petitioner-appellees.

Before ESCHBACH and COFFEY, Circuit Judges, and CAMPBELL, Senior District Judge.*

---

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois,

ESCHBACH, Circuit Judge.

Respondents appeal from the judgment of the district court granting petitioner John Williams a writ of habeas corpus under 28 U.S.C. § 2254. The district court entered summary judgment for petitioner, who is in custody pursuant to a bench verdict, on the ground that Williams had not knowingly and intelligently waived his right to a trial by jury secured by the Sixth and Fourteenth Amendments of the United States Constitution. For the reasons below, we reverse.

I

In 1975, Williams was convicted after a bench trial of armed robbery and unlawful use of weapons. His convictions, and those of his co-defendants, Willie Nelson and Victor Watts, stemmed from a robbery of a real estate office during which Williams threatened the victims with a sawed-off shotgun. Prior to trial, Williams signed a jury waiver form, which read: "I, the undersigned, do hereby waive jury trial and submit the above cause to the Court for hearing." At the time the waiver was signed, the following colloquy took place among the presiding judge, the defendants, and their separate attorneys:

MR. VISHNY [Counsel for Williams]: In behalf of John Williams, it will be a bench.

MR. ISRAELSTAM [Counsel for Watts]: In behalf of Watts, it will be a bench.

MR. LIVINGSTON [Counsel for Nelson]: In behalf of Willie Nelson it will be a bench also.

\* \* \* \* \* \*

THE COURT: Let the record show that Mr. William Nelson, is that you?

MR. NELSON: Yes.

THE COURT: You have read this jury waiver?

MR. NELSON: Yes.

THE COURT: Do you know what a jury trial is? That is, where 12 people of this

sitting by designation.

County will be put in a box, and they will hear the evidence in this matter, and they will determine your innocence or guilt in accordance with the law that the Court will give them and instruct them in the matters before the Court? Do you understand that?

MR. NELSON: Yes.

THE COURT: Do you understand that you have a right to a jury or you have a right to waive that jury? Do you understand that?

MR. NELSON: Yes.

THE COURT: And Mr. Watts, do you understand that you have a right to a jury trial? Do you understand that?

MR. WATTS: Yes, sir.

THE COURT: And have you read this jury waiver?

MR. WATTS: Yes.

THE COURT: Have you read it where you say, I, the undersigned do hereby waive the jury and submit the cause to the Court? Do you understand that?

MR. WATTS: Yes.

THE COURT: You want the Court to hear this matter, and are you waiving the jury?

MR. WATTS: I want a bench trial.

THE COURT: You want a bench trial?

MR. WATTS: Yes.

THE COURT: You understand that when you take a bench trial that you waive your jury? Do you understand that?

MR. WATTS: Yes.

THE COURT: All right. Let the record show that the defendant, Mr. Victor Watts, has executed a jury waiver in the presence of his counsel.

And you, Mr. Williams, do you know what a jury trial is? I just explained it to Mr. Nelson and Mr. Watts.

MR. WILLIAMS: Yes.

THE COURT: And you know that a jury trial is 12 people sitting in the box who will determine your innocence or guilt? You understand that?

MR. WILLIAMS: Yes.

THE COURT: And you know that you have this right, or you have the right to have the Court hear your case? Which do you wish?

MR. WILLIAMS: Bench.

THE COURT: Have you read the jury waiver, which states, I, the undersigned, do hereby waive a jury trial and submit the above entitled cause to the Court. Have you read that?

MR. WILLIAMS: Yes.

THE COURT: Do you understand it?

MR. WILLIAMS: Yes.

THE COURT: Let the record show that Mr. Williams has executed a jury waiver.

Let the record reflect that the defendants in open court accompanied by their counsel have executed jury waivers and they thereby waive their rights to a jury trial.

Williams appealed his conviction and twenty to forty-five year sentence, contending, inter alia, that the trial court record was devoid of any evidence that he had been advised of his right to trial by jury aside from a jury trial waiver form which he had signed. The state filed the above quoted colloquy to supplement the record, and the appellate court held that Williams "understandingly waived his right to trial by jury." *People v. Williams,* 47 Ill.App.3d 798, 802, 8 Ill.Dec. 177, 180, 365 N.E.2d 415, 418 (1977). The Illinois Supreme Court denied Williams' petition for leave to appeal. The trial court denied Williams' petition for post-conviction relief in 1980.

On April 14, 1981, Williams filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Northern District of Illinois. Appointed counsel filed an amended petition raising a single ground for relief: that his waiver of a jury trial was constitutionally infirm because the trial court had not sufficiently informed Williams of his right to trial by jury. Respondents filed a motion to dismiss the amended petition, arguing that the Constitution does not require a defendant to be informed of his right to jury trial by the trial court as a condition of a valid waiver.

The district court denied the motion to dismiss. 538 F.Supp. 899 (N.D.Ill.1982). While it rejected the argument that a state trial judge is compelled by the Constitution to interrogate the defendant to assure that a waiver is knowing and voluntary, it held that in order for a waiver of the right to trial by jury to be sustained against collateral attack, there must be an affirmative showing that the waiver was in fact voluntary and intelligent. Since petitioner did not claim his waiver was involuntary, the court proceeded to scrutinize the state court record and concluded that it was insufficient to establish that Williams' waiver was a knowing and intelligent one. The court reasoned that one cannot knowingly waive a right unless one is cognizant of the character or nature of the right he is waiving, and concluded that a defendant must have knowledge of four concepts to effect a constitutionally valid waiver of the right to trial by jury: (1) a jury is composed of 12 members of the community; (2) a defendant may participate in the selection of jurors; (3) a "substantial majority" of the jurors must vote to convict in order for a conviction to be obtained; and (4) if a defendant waives a jury trial, a judge alone will decide his guilt or innocence. The court found the record sufficient to uphold the waiver regarding the first and fourth items, but since the record was silent on the question of Williams' knowledge of the other concepts, the court denied the motion to dismiss.

Petitioner then filed a motion for summary judgment, arguing that if the defendant's knowledge of his right does not appear in the record, the waiver of that right is constitutionally infirm. Respondents argued that the crucial question was whether petitioner in fact was aware of his right at the time of the waiver and urged that an evidentiary hearing was required on that issue. Petitioner replied by reiterating his position, but despite the fact that petitioner contended it was unnecessary, he filed an affidavit in which he stated that he had not been aware "that a jury trial would allow him to participate in the selection of the jurors who would try his cause," nor had he

been aware "that a jury trial would require a unanimous decision of the jurors in order for him to be convicted."[1] He also stated in his affidavit that he had "waived his right to a jury trial and was tried by the court pursuant to the advice of his counsel ...," and that his 1975 trial was his first trial. Respondents did not file any counteraffidavits, though they did assert in a brief that they had contacted petitioner's trial counsel, who reportedly said that he remembered discussing the jury trial waiver with Williams, but did not remember the details of the conversation.

The district judge granted petitioner's motion for summary judgment, finding no material issue of fact, and holding that petitioner was entitled to judgment as a matter of law. The court observed that respondents wholly failed to establish a material issue of fact by their failure to submit any affidavits or other evidentiary material to contradict Williams' affidavit, and again observed that the record itself was silent regarding Williams' knowledge of concepts the court had ruled essential to a constitutionally valid waiver.

## II

The dispositive question on appeal is whether a criminal defendant must have personal knowledge of his right to participate in the selection of his jury and his right to be convicted only upon a substantial majority vote of the jurors in order for him to effect a constitutionally valid waiver of his right to trial by jury under the Sixth and Fourteenth Amendments. We conclude that an accused's ignorance of these attributes of a jury trial does not render his jury trial waiver and subsequent bench trial conviction void as a matter of constitutional law.

## III

The district court reached its conclusion that specific knowledge of the "substantial majority" and "participation" attributes of a jury trial is essential to intelligent waiver by giving constitutional dimension to a case

---

1. Under Illinois law, the verdict must be unanimous.

this court had decided under its supervisory power over lower federal courts of the circuit. In *United States v. Delgado,* 635 F.2d 889 (7th Cir.1981), we expanded on the supervisory rule we had laid down in *United States v. Scott,* 583 F.2d 362, 364 (7th Cir. 1978) (per curiam), requiring interrogation of the defendant before accepting a jury waiver. In *Delgado,* we specified four areas that must be covered in the interrogation. We held that the district court must explain to the defendants (1) that a jury is composed of twelve members of the community, (2) that the defendant may participate in the selection of jurors, (3) that the verdict of the jury must be unanimous, and (4) that if the defendant waives a jury trial, the judge alone will determine guilt or innocence. *United States v. Delgado, supra,* 635 F.2d at 890. Recognizing that the *Delgado* requirements were tailored to the federal jury system and could not be applied as written when considering a habeas petition from a state prisoner, the district court evaluated and modified the *Delgado* requirements in light of what it perceived to be constitutional attributes of a jury trial. The court decided that the right to participate in the selection of the jury was of constitutional dimension, arising from the constitutional right to an impartial jury. 538 F.Supp. at 905–06. The court next decided that while the constitution does not require a unanimous verdict to convict, it does require that such a verdict be supported by a substantial majority. *Id.* at 907. On determining that Williams had not been sufficiently informed of the second and third *Delgado* requirements, as modified, the court concluded that Williams' jury waiver was constitutionally infirm. *Id.* at 908–09.

While it might be wise for states to require that criminal defendants be informed of the *Delgado* requirements, modified as necessary to conform to the state jury system, we hold that awareness of the two jury attributes at issue here, the participation and the substantial majority attributes, is not constitutionally required for a knowing and intelligent jury waiver.

**A. Jury Waiver in General**

 Trial by jury is fundamental to the American system of criminal justice and the Sixth Amendment's guarantee of the right to trial by jury is applicable to the states under the Fourteenth Amendment. *Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968). A defendant may waive his right to a jury trial and instead be tried by the court. *Patton v. United States,* 281 U.S. 276, 298, 50 S.Ct. 253, 258, 74 L.Ed. 854 (1930). However, a defendant does not have a constitutional right to waive a jury trial and insist upon a bench trial; either the court or the prosecutor may veto his request for a bench trial. *Singer v. United States,* 380 U.S. 24, 36, 85 S.Ct. 783, 790–791 (1965). In those cases in which the defendant requests a bench trial and the court and prosecutor assent, the defendant loses the protection which the right to jury trial would have provided him: he no longer has the buffer of the judgment of his fellow citizens between him and the imposition of punishment by the state, but instead his fate is in the hands of a state official. Presuming waiver of such a cherished right from a silent record is impermissible, and in a collateral proceeding either the record or independent evidence must demonstrate a valid waiver, *see Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962) (waiver of counsel); *cf. Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969) (direct appeal of guilty plea), though the burden of establishing a prima facie invalid waiver rests on the person asserting its invalidity, *see Adams v. United States ex rel. McCann,* 317 U.S. 269, 281, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942), *amended on denial of petition for rehearing,* 317 U.S. 605 (1943) (jury trial waiver); *cf. Johnson v. Zerbst,* 304 U.S. 458, 468–69, 58 S.Ct. 1019, 1024–1025, 82 L.Ed. 1461, (1938) (right to counsel).

 A valid waiver is "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst, supra,* 304 U.S. at 464, 58 S.Ct. at 1023. "Waivers of constitutional rights not only must be voluntary but must be knowing,

intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970) (footnote omitted). "[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." *Adams v. United States ex rel. McCann, supra,* 317 U.S. at 278, 63 S.Ct. at 241. However, with respect to rights guaranteed to preserve a fair trial, such as the right to trial by jury, the defendant must always understand the right he is abandoning, irrespective of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 237–38 & n. 25, 93 S.Ct. 2041, 2052–2053 & n. 25, 36 L.Ed.2d 854 (1973).

## B. *The Constitutional Dimensions of a Jury Trial*

The district court held that a defendant's right to participate in the selection of the jury and the requirement of a substantial majority consensus to convict were of constitutional dimension. We note that the constitutional parameters of these two jury attributes are not yet entirely settled.

With regard to the substantial majority requirement, there is an interplay between the number of jurors and the percentage needed to convict. A vote of nine to convict out of a jury of twelve is constitutionally sufficient to support a guilty verdict, *Johnson v. Louisiana,* 406 U.S. 356, 363, 92 S.Ct. 1620, 1625, 32 L.Ed.2d 152 (1972), while the verdict of a jury of six must be unanimous, *Burch v. Louisiana,* 441 U.S. 130, 138, 99 S.Ct. 1623, 1627, 60 L.Ed.2d 96 (1979). It is not yet clear whether a percentage vote of less than three quarters of a twelve person jury would pass constitutional muster, but it does appear that something more than a mere majority vote is necessary to assure the reliability of the verdict. *See Brown v. Louisiana,* 447 U.S. 323, 330–334, 100 S.Ct. 2214, 2221–2223, 65 L.Ed.2d 159 (1980) (plurality opinion) (discussing size and percentage votes as they relate to the function of a jury). Thus, depending on the size of the jury provided by the state, a defendant's right ranges from a unanimous verdict to some as yet undelimited greater-than-simple-majority verdict.

Regarding the participation requirement, the Constitution expressly guarantees the right to an "impartial" jury, but does not specify a particular mechanism to ensure that an impartial jury will be impaneled. The legislative history of the Sixth Amendment can be interpreted to suggest that challenges for cause are not required by the Sixth Amendment, *see Williams v. Florida,* 399 U.S. 78, 94–99, 90 S.Ct. 1893, 1902–1905, 26 L.Ed.2d 446 (1970) (observing that right to challenge for cause, like the unanimity requirement, expressly appeared in the original version of the Sixth Amendment introduced in the House of Representatives), and the Supreme Court has stated that "[t]here are many ways to try to assure the kind of impartial jury that the Fourteenth Amendment guarantees." *Groppi v. Wisconsin,* 400 U.S. 505, 509, 91 S.Ct. 490, 492, 27 L.Ed.2d 571 (1971); *see also, Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965) (no constitutional right to peremptory challenges). Challenges for cause are a traditional method of safeguarding the right to an impartial jury, but it is not yet clear whether challenges for cause are constitutionally mandated or whether states may experiment with alternative safeguards.

For the purpose of further discussion, we shall assume, *arguendo,* that the Sixth Amendment does secure a defendant's right to participate in jury selection and the right to a substantial majority jury verdict. We emphasize that we in no way pass on these constitutional issues. The only issue we decide is whether, assuming these jury attributes are of constitutional dimension, a state criminal defendant must be aware of these attributes to validly waive a jury trial.

## C. *The Prerequisites of Knowing and Intelligent Waiver*

To require that a defendant have an exhaustive knowledge of all the doctrinal subtleties of Sixth Amendment jurisprudence in order for him to waive its protections would be tantamount to saying that only an attor-

ney, and a highly competent criminal defense attorney at that, would be capable of a knowing waiver.

The district court recognized this point, but held that the participation and substantial majority requirements "are not mere incidents collateral to the main right to a jury; they are at the core of that right," 538 F.Supp. at 908. On an abstract doctrinal level, we might agree that the safeguard of a jury depends in large measure on how the institution operates and that the facets of a jury trial identified by the district court are important features of that institution. However, we disagree that knowledge of these concepts is essential to a knowing waiver as a matter of constitutional law.

A constitutional right has significance to a lawyer which is likely lost on a layperson. While a lawyer thinks of a right in abstract terms—a core legal principle from which there flow a number of ancillary principles, the significance of a right to a layperson lies in its purpose and function. The purpose of a jury trial:

> is to prevent oppression by the Government. "Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the complaint, biased, or eccentric judge." *Duncan v. Louisiana, supra,* 391 U.S. at 156, 88 S.Ct. at 1451. Given this purpose, the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of

a group of laymen, and in the community participation and shared responsibility that results from the group's determination of guilt or innocence.

*Williams v. Florida,* 399 U.S. 78, 100, 90 S.Ct. 1893, 1905, 1906, 26 L.Ed.2d 446 (1970).

■ In this case, we think the concrete understanding of a jury trial which the record discloses that petitioner Williams possessed was sufficient for a knowing and intelligent waiver. He understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge.[2] Since he had a concrete understanding of that choice, he was in a position to determine whether an invocation of his right to a jury trial was necessary to effectuate its purpose.[3]

While many factors might enter into a decision to waive the right to trial by jury, and while an attorney's advice concerning the matter may often be followed by a defendant, given the attorney's experience and expertise, the defendant must ultimately decide for himself if he trusts the judgment of his fellow citizens with his fate, or if he would rather entrust it to the judgment of a solitary state judicial officer. In the instant case, it appears that the historic function of the right to trial by jury was deemed either irrelevant or unimportant by Williams. He realized that he had an entitlement to have his guilt or innocence determined by his fellow citizens in the community, but decided to follow his lawyer's advice and request a bench trial.[4]

---

2. The concept of judgment by one's peers is probably implicit, for most persons, in the term "jury trial" itself.

3. Our view that it is a concrete knowledge of a right which is necessary for a constitutionally valid, knowing waiver of the right is supported by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which specifies the type of knowledge an accused must possess in order to knowingly waive his privilege against self-incrimination. If a defendant grasps the basic concept that he has a right to refuse to speak to the police and a right to counsel, but if he does speak to the police anything he says could be used against him, he has sufficient knowledge of his Fifth Amendment privilege to

execute a knowing waiver. He does not need to know about the exclusionary rule; he does not need to know that it may constitute grounds for a mistrial if the prosecutor comments on his post-arrest silence; in short, he does not need to know the specifics of how the safeguard operates in order to knowingly waive its protection.

4. There is no suggestion that the waiver was involuntary in any sense, nor is there any suggestion that it was unwise, under the circumstances. Indeed, the decision to opt for a bench trial appears quite reasonable given the circumstances of the offense and the evidence of petitioner's conduct after the offense. *See*

We cannot accept petitioner's contention that his jury trial waiver was unknowing and his resulting bench trial conviction is void because he did not know about jury selection procedure and an amorphous and unquantified right to a substantial majority verdict. He has never contended that he would have made a different decision had he known about these concepts and might very well demand a bench trial on retrial of the charge against him if we affirmed the granting of the writ.[5] We are unpersuaded that a state defendant's personal knowledge of these particular attributes of a jury trial would necessarily be so important in weighing the available options that it would be fundamentally unfair to give effect to a waiver executed without knowledge of these attributes, particularly where the defendant was represented by competent counsel, there were no extenuating circumstances to indicate that these particular attributes would have been of particular significance to the defendant, and there is no indication or allegation that the ensuing bench trial was in any way unfair.

### D. The Implications of Constitutionalizing Delgado

Requiring, as a matter of federal constitutional law, that a state defendant be aware of the participation and substantial majority attributes (the constitutionalized variation of the second and third requirements of Delgado, supra, 635 F.2d at 890) begs the question of how complete the defendant's understanding of these concepts must be.

A bare instruction that a defendant is entitled to participate in the selection of the jury may imply to one defendant that he has the right to passively observe the proceedings in open court. Another defendant, told that he has the right to participate in the selection of the jury, may infer that he has more control over the composition of the jury than he actually does unless told that the prosecution has a similar right. Furthermore, unless he understands the substantive bases for challenges for cause, and comprehends the considerable discretion a trial judge has in conducting voir dire, his abstract knowledge of his right to participate could be more illusory than real. To place the right to challenge jurors for cause in perspective, a defendant may also have to know that he would have a similar right to challenge a biased judge if tried to the bench. Finally, knowledge of jury selection would be incomplete without knowing about peremptory challenges, which are afforded defendants in Illinois. In short, if we were to hold that a jury waiver is constitutionally defective without awareness of the assumed participation right, we would face the question of how completely a defendant must understand the attributes of that right.

A similar problem confronts us with the assumed substantial majority right. If the defendant were informed of the minimum *constitutional* requirement but under *state law* had a right to a unanimous verdict of twelve jurors, as Williams had under Illinois law, the defendant may get the mistaken impression that the state would have an easier task in obtaining conviction than would actually be the case. The source of his right to a unanimous verdict, while of significance to lawyers, is largely irrelevant to the criminal defendant trying to weigh his options. If only aware that a substantial majority must vote to *convict*, a defendant might have a false sense of confidence regarding the advantages of a jury trial unless also informed that a substantial majority would be required to acquit, and that a hung jury could result in a retrial of the charges against him.

If we were to hold that the defendant must be aware of the assumed participation and substantial majority attributes, we would also face the question of whether knowledge of any other constitutional attributes is necessary for valid waiver. The process of selecting venires from which ju-

---

*People v. Williams,* 47 Ill.App.3d 798, 803, 8 Ill.Dec. 177, 180, 365 N.E.2d 415, 418 (1977).

**5.** Under Illinois statutory law, a defendant has a right to a bench trial even over the objection

of the prosecution. *People v. Spegal,* 5 Ill.2d 211, 125 N.E.2d 468 (1955); *People v. Reed,* 23 Ill.App.3d 546, 319 N.E.2d 557 (1974).

ries are drawn cannot operate to discriminate against jurors on the basis of race, *see Avery v. Georgia,* 345 U.S. 559, 561, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953), sex, *see Taylor v. Louisiana,* 419 U.S. 522, 531, 95 S.Ct. 692, 698, 42 L.Ed.2d 690 (1975), or any other factor that would systematically exclude distinctive groups in the community, *id.* at 538, 95 S.Ct. at 701–702; yet a defendant is not constitutionally entitled to a venire or jury that perfectly mirrors the composition of his community, *see Swain v. Alabama,* 380 U.S. 202, 208, 85 S.Ct. 824, 829, 13 L.Ed.2d 759 (1965). These attributes of a jury trial may be just as important to a defendant concerned about the composition of his jury as his assumed right to participate in selection, yet we have not required knowledge of these attributes even through our supervisory power over lower federal courts.

This court has decided, as an exercise of its supervisory power, that federal criminal defendants should be informed of certain aspects of the federal jury system. Some of the arguments against constitutionally requiring similar knowledge of state defendants can be leveled at our supervisory *Delgado* requirements, yet there is no inconsistency in defending *Delgado* at the federal level while declining to foist it upon the states. After assessing the attributes of a federal jury trial, constitutional and otherwise, we have decided that some attempt should be made to inform defendants of the rudiments of a jury trial. However, we believe that decisions as to what particular knowledge a defendant must have and the manner in which he is to receive it are best left to the flexible device of a unitary court system's supervisory powers. Moreover, requiring, as a matter of constitutional law, that a defendant personally be aware of all, or even the most important incidental attributes of a jury trial "would only sow the seeds for later collateral attack." *United States v. Sherman,* 474 F.2d 303, 305 (9th Cir.1973) (in context of rights given up by pleading guilty).

### E. *The Role of Counsel*

■ One can effect a constitutionally valid waiver of a jury trial even if he is not represented by counsel. *Adams v. United States ex rel. McCann, supra,* 317 U.S. at 278, 63 S.Ct. at 241. In a case such as the instant one, however, where the defendant is represented by counsel, that fact is relevant in determining whether he knowingly waived his right. "The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights...." *Johnson v. Zerbst, supra,* 304 U.S. at 465, 58 S.Ct. at 1023. It is no answer for petitioner to say that counsel did not inform him of jury selection procedure and the substantial majority requirements; counsel does ·not have to inform a client of all of the legal and · procedural knowledge which forms the basis of his professional advice. There is no claim in this case of ineffective assistance of counsel and we will not postulate counsel's ignorance of jury selection procedure nor the fact that under Illinois law a unanimous jury is required to convict (a consideration which a fortiori subsumes the substantial majority requirement identified by the district court). Counsel made his recommendation to petitioner possessed of this knowledge, and while we do not invoke the fiction of constructive knowledge, we think that to the extent that the jury selection process and the substantial majority verdict requirement need to enter into a defendant's calculus, it is sufficient that he is being advised by counsel who can be presumed to know about such matters in the absence of some showing of incompetence. Indeed, those who have been most vigilant in jealously protecting the right to jury trial and argued in favor of a "reliable objective standard by which the trial court satisfies itself that the layman who waives trial by jury ... has a full understanding of the consequences," themselves viewed the appointment of counsel as "the only safe and practical alternative." *Adams v. United States ex rel. McCann, supra,* 317 U.S. at 284, 63 S.Ct. at 244 (Douglas, J., dissenting).

■ We do not suggest that counsel can decide the question for his client. The right to a jury trial is personal to a defendant and one which he alone may waive. *See*

*United States v. England,* 347 F.2d 425, 430 (7th Cir.1965). He must understand the choice confronting him and must understand that choice is his to make. However, a defendant who is aware that the choice he faces is between being judged by a group of his fellow citizens or a judge may conclude intelligently that his lawyer's advice, based upon his experience and his knowledge of law and procedure, is entitled to controlling weight.

### F. Supporting Case Law

An examination of a wealth of case law reinforces our conclusion that knowledge of the rights identified by the district court is unnecessary for a knowing and intelligent waiver of the right to a trial by jury. Our research discloses no cases in which a jury waiver has been held constitutionally defective because the defendant was not aware of the participation and substantial majority attributes.[6]

In most cases in which waiver has been challenged, it is not possible to discern from the court's opinion whether the defendant had been advised by the trial judge or was otherwise made aware of these specific attributes. *See e.g., United States v. Martin,* 704 F.2d 267, 274 (6th Cir.1983) (trial counsel represented that he had informed the defendant of "the dimensions of his jury trial right"); *United States ex rel. Gentry v. Circuit Court of Cook County,* 586 F.2d 1142, 1143–46 (7th Cir.1978) (court found that testimony of habeas petitioner's former counsel before the district court indicated that petitioner "clearly understood" his right to a jury trial); *United States v. Kidding,* 560 F.2d 1303, 1311 (7th Cir.1977), *cert. denied,* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977) (defendant had signed jury waiver stating that he had been advised in open court of his right to trial by jury); *United States v. Mitchell,* 427 F.2d 1280, 1281–82 (3d Cir.1970) (jury waiver

form stated that defendant had been "fully informed" of his constitutional right to a jury trial); *United States v. Hunt,* 413 F.2d 983, 983–84 (4th Cir.1969) (jury waiver form stated that the defendant had been "informed of [his] rights.").

In other cases, however, it is clear that the trial judge did not inform the defendant of both the participation and substantial majority attributes and there is no indication that the defendant had been made aware of these by other means, yet the defendants' jury waivers were held to be knowing and intelligent. In *United States v. Conforte,* 457 F.Supp. 641 (D.Nev.1978), *aff'd,* 624 F.2d 869 (9th Cir.1980), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980), the record disclosed that the trial judge had "explained the differences between a jury trial and bench trial, the burdens of proof, and the requirement of unanimity for a jury to convict," and that the defendant had discussed jury waiver with his attorney. *Id.* 457 F.Supp. at 660–61. Even though there was no indication that the defendant was aware of his right to participate in the selection of jurors, the court held that the jury waiver "passes even the most stringent constitutional scrutiny." *Id.* at 661. In *Asbury v. Cox,* 314 F.Supp. 1196 (W.D.Va.1970), a state habeas petitioner attacked the validity of his jury waiver. Before trial, the trial judge asked the petitioner the following question:

> I understand from your counsel, Mr. Hughes, that you desire to waive a trial by jury and have the matter heard by the Court under your plea of not guilty, now do you understand your rights fully and do you desire to waive a jury trial and have the matter heard by the Court, is that correct?

**6.** In *United States ex rel. Baez v. Circuit Court of Cook County,* 395 F.Supp. 1285 (N.D.Ill. 1975), cited by the district court in support of its holding, 538 F.Supp. 899, 909–10 n. 11 (N.D. Ill.1982), the court found that the defendant's jury waiver was invalid because there was no indication that the defendant knew that he had the right to a jury trial. His trial counsel had

waived a jury, and the defendant later submitted an affidavit stating that he had not been aware of his right to a jury trial. *Baez, supra,* 395 F.Supp. at 1286–87. By contrast, in the instant case, Williams does not contend that he was unaware of his right to trial by jury, but only that he was unaware of two attributes of a jury trial.

*Id.* at 1197. The petitioner answered affirmatively and was convicted after a bench trial. The district court held that this colloquy was sufficient to demonstrate the lack of merit in petitioner's claim. *Id.*

We also draw some support from *United States v. McCurdy,* 450 F.2d 282 (9th Cir. 1971), even though the case specifically addressed only whether the defendant's jury waiver was valid under Rule 23(a) of the Federal Rules of Criminal Procedure.[7] In that case, the colloquy between the trial judge and the defendant shows that the defendant had been advised that:

> [Y]ou have a right to have this case tried by a jury composed of twelve people, and if I understand correctly from what your counsel said, you are willing to waive that right to a jury trial and have the Court, sitting alone, determine whether you are guilty or not of the offense charged; is that correct?

*Id.* at 283. The defendant answered affirmatively and was convicted after a bench trial. The court held that the appearance of this waiver in the record satisfied the requirements of Rule 23(a).

The above cited cases, both those in which it is unclear what specific information the defendant was given about a jury trial and those in which it is apparent that the defendant was not informed of both the participation and substantial majority attributes, do not specifically address the issue we now face. We are aware of only one prior case in which a state habeas petitioner attacked the validity of his jury waiver explicitly on the ground that he had not been informed of specific attributes of a jury trial, including the requirement of unanimity (required under his state's law) and his right to participate in empanelling jurors. *See Ciummei v. Amaral,* 493 F.Supp. 938, 941 (D.Mass.1980), *aff'd mem.,* 636 F.2d 1199 (1st Cir.1980), *cert. denied,* 451 U.S. 989, 101 S.Ct. 2327, 68 L.Ed.2d 848 (1981). In that case, the court was not satisfied that the petitioner's arguments outweighed the evidence supporting the state court's finding of valid jury waiver,

which included the testimony of trial counsel that the petitioner had understood his right to a jury trial in other criminal proceedings, counsel's testimony that he had explained the advantages and disadvantages of a jury trial, and evidence of the petitioner's previous jury waivers in other proceedings. The court concluded that "[f]ailure to render a complete description of the jury's nature and function . . . does not affect the validity of petitioner's waiver given the other indicia of voluntariness and knowledge." *Id.* While the court's holding could have been based on a finding that the petitioner had indeed been aware of the unanimity and participation attributes, we believe a fair reading of the opinion as a whole better supports an interpretation that awareness of these specific attributes is not constitutionally required for a valid waiver.

We would hesitate to rely exclusively on the lone case specifically addressing the issue before us, especially since the basis of the court's holding is not entirely clear. Likewise, we use caution in evaluating those above cited cases that do not specifically discuss and decide the issue because the attention of those courts was more immediately focused elsewhere. Nevertheless, we find that these cases, taken together, strongly support our holding that a constitutionally valid jury waiver does not require awareness that the defendant may participate in the selection of the jury and that a guilty verdict must rest on at least a substantial majority consensus to convict. In all of these cases, the court was asked to determine whether a jury waiver was valid, and in most of the cases, the court's specifically focused on whether the defendant was sufficiently aware of the constitutional right he was giving up. In none of the cases did the court condition validity on awareness of the participation and substantial majority attributes, even in those instances where the record affirmatively indicated that the defendant had not been advised of these attributes.

---

**7.** Rule 23(a) provides that "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government."

When a defendant enters a plea of guilty, he waives, among other rights, his right to trial by jury. *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1170–1171, 22 L.Ed.2d 418 (1969). Although the choice between a jury trial and a bench trial involves different considerations than the choice between a jury trial and no trial at all, the same constitutional right is at stake in either context.[8] We therefore find support in that body of case law addressing the validity of guilty pleas.

As with cases addressing jury waiver alone, the courts' opinions usually do not specifically disclose whether the defendant had been advised of or was otherwise made aware of the substantial majority and the participation attributes of a jury trial. *See e.g. United States ex rel. Grundset v. Franzen,* 675 F.2d 870, 879 (7th Cir.1982) (at hearing to vacate guilty plea, defendant testified that he knew that by pleading guilty, he was giving up the right to a jury trial); *Williams v. Wainwright,* 604 F.2d 404, 405 (5th Cir.1979) (trial judge had informed defendant that by pleading guilty, he waived his right to a jury trial). In other cases, the opinion affirmatively shows that the defendant had not been advised of these two attributes. In *United States ex rel. Crossman v. Pate,* 440 F.2d 535 (7th Cir.1971), before accepting a state defendant's guilty plea, the trial judge addressed the defendant as follows:

> You are entitled to a Jury Trial, to be confronted by the witnesses that testify against you, you cannot be found guilty until so found by a Jury of twelve. You have a right to have witnesses subpoenaed to testify in your behalf. If found guilty, the Court could sentence you to the Penitentiary for a term of not less than one nor more than life, the Court to fix the term of punishment. I believe

you have counsel. I believe you have been given an explanation of your rights. Now, are you ready to plead to the information?

*Id.* at 537 n. 5. The defendant responded in the affirmative and pled guilty. Even though there was no indication that the defendant was aware of the substantial majority and participation attributes, this court held that his guilty plea was intelligent. *Id.* at 540. In *McChesney v. Henderson,* 482 F.2d 1101 (5th Cir.1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974), a state habeas petitioner challenged his guilty plea, contending that he had not been fully advised of the rights he was waiving. The court set out at length the colloquy between the trial judge and the petitioner and the testimony of the petitioner's trial counsel at a state habeas corpus proceeding. *Id.* 482 F.2d at 1102–04 nn. 4 & 5. The trial judge did not inform the petitioner of his right to trial by jury, and while trial counsel did discuss this right with him, there is nothing in his testimony to indicate that the petitioner was made aware of the participation and substantial majority attributes of a jury trial. Yet the court concluded that the petitioner had entered into his guilty plea "intelligently and voluntarily with knowledge of its consequences." *Id.* at 1111.

Like most of those cases considering jury waivers alone, these cases do not specifically address the issue before us in the instant case, yet we conclude that these cases, like the jury waiver cases, add support to our decision that awareness of the assumed participation and substantial majority attributes of a jury trial is not constitutionally required for valid waiver. We additionally observe that under Rule 11(c) of the Federal Rules of Criminal Procedure, the court

---

**8.** Indeed, if affirmed, the district court's position could arguably be extended to invalidate the guilty pleas of all defendants who had not been advised of the participation and substantial majority attributes of the jury trial they were foregoing. While the magnitude of the number of cases involved would not deter us from affirming if we believed the district court's position was correct, we note that in 1980, of 25,714 felony convictions in Illinois,

22,601 were by guilty pleas, 1911 were by bench trials and 1202 were by jury. *See* 1980 Annual Report of the Administrative Office of the Illinois Court at 170–71. Our survey of the relevant case law indicates that few of those defendants who either pled guilty or were tried to the bench were specifically advised of the participation and substantial majority attributes.

must inform a defendant of his right to a jury trial before the court accepts a guilty plea.[9] The rule does not require the court to inform a defendant of the participation and substantial majority attributes of a jury trial. While this rule could not supersede the requirements of the Constitution, we find some support in the fact that the drafters of this rule apparently did not believe that a guilty plea would be unknowing or unintelligent if the defendant were not informed of these two attributes.

## IV

In *United States ex rel. Gentry v. Circuit Court of Cook County,* 586 F.2d 1142 (7th Cir.1978), we examined a jury waiver that was evidenced only by a notation in the clerk's minutes reading "Defendant waives jury trial," and a cryptic longhand notation on a half sheet in one of the records reading "PNGJW," which counsel for the state understood to mean "Plea of Not Guilty, Jury Waived." *Id.* at 1145. In the district court, the habeas petitioner's trial counsel testified that he had told his client what was involved in a jury trial. *Id.* at 1143. In upholding the validity of that jury waiver, we observed:

> To be sure, the method of ascertaining a waiver of a jury trial in the state court seems rather cavalier and probably does not conform to the present standard of obtaining a waiver required in the federal courts . . . .

*Id.* at 1146. In response to the petitioner's argument that the trial judge should have interrogated him to ensure that the waiver was knowing and voluntary, we noted that we had imposed the interrogation requirement on lower federal courts as an exercise of our supervisory power, and concluded:

> Needless to say, we have no supervisory power over the state court system. Our review of a state habeas petition is a

narrow one and not the broad exercise of supervisory power that we would possess in regard to our own trial court.

*Id.* (citation omitted).

As with the interrogation requirement at issue in *Gentry,* the four part requirement of *Delgado, supra,* 635 F.2d at 890, was imposed as an exercise of our supervisory power, and we can impose that requirement on a state only if we find that the requirement is mandated by the Constitution. And, as with the interrogation requirement, we find that the *Delgado* requirement is not.

In the instant case, Williams and his co-defendants were represented by separate and competent counsel at the time of their jury waivers. The colloquy among the presiding judge, the defendants and their attorneys indicates that the defendants were informed and understood that they had a right to a jury trial, that the jury would consist of twelve people from the county, that the jury would hear the evidence and determine their guilt or innocence according to the law, that the judge would instruct the jury about the law, and that if the defendants chose a bench trial, they would be waiving a jury trial. Williams and each of his co-defendants then signed a form which waived a jury trial and submitted the cause to the court. We hold that Williams, assisted by counsel and so instructed by the court, was capable of making "a voluntary and intelligent choice among the alternative courses of action open to [him]," *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970); thus, we conclude that his jury waiver was knowing, intelligent, and constitutionally valid.

## V

For the reasons above, the district court's judgment granting Williams' petition for habeas relief is reversed.

---

**9.** Rule 11 reads, in pertinent part:

 (c) Advice to the Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

 . . . .

 (3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself . . . .